IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Michael F. Abrams, et al., | Case No. 3:13 CV 137 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Nucor Steel Marion, Inc., | |
| Defendant. | |

Plaintiffs Randall Bush and Ronald Tolle live near Defendant Nucor Steel Marion, Inc.'s ("Nucor") steel mill and claim Nucor's slag processing operations "have resulted in dangerous levels of manganese being released and entering into, onto and around [their] properties, thus contaminating [their] soil, vegetation, air, land, and dwellings" (Doc. 6 at ¶ 4). To prove their claims of trespass and nuisance, Plaintiffs intend to rely on expert testimony from a neurologist, an environmental consultant, and a real estate broker.

Defendant moves to exclude Plaintiffs' three expert witnesses (Doc. 67). Plaintiffs oppose the Motion and request Defendant be judicially estopped from advancing arguments at trial that allegedly contradict Defendant's position in other litigation (Doc. 70). Plaintiffs also filed a Motion for Judicial Notice of information found on the EPA's website, and documents related to other litigation involving Defendant (Doc. 72). This Court held a record hearing on the Motions (Docs. 84–85). For the following reasons, Defendant's Motion to Exclude (Doc. 67) is granted in part and denied in part, and Plaintiffs' Motion for Judicial Notice (Doc. 72) is denied without prejudice.

**BACKGROUND**

At trial, Plaintiffs intend to prove Nucor is liable for indirect trespass and private nuisance because the "hazardous" and "ultra-hazardous" levels of manganese Nucor allegedly emitted are harmful to human health, damaged Plaintiffs' properties, and adversely affected the value of their real estate. Plaintiffs repeatedly emphasize this is *not* a "toxic tort injury" action and they are *not* claiming Nucor is liable for any bodily harm or personal injury. Plaintiffs *only* seek recovery for property damage (Doc. 70 at 7–9). An essential element in each of Plaintiffs' claims is injury or damages proximately caused by Nucor's tortious conduct. *See Allstate Fire Ins. Co. v. Singler*, 14 Ohio St. 2d 27, 29 (1968) ("[T]o recover compensatory damages, it is necessary to prove that the trespass proximately caused the harm for which compensation is sought and to prove the amount of the damage"); *Brown v. Scioto Cty. Bd. of Comm'rs*, 87 Ohio App. 3d 704, 713 (1993) (claims for nuisance require showing of "unreasonable risk of harm which in due course results in injury to another").

In their Opposition to Defendant's *Daubert* Motions, Plaintiffs appear to expand their claim from damage caused by manganese to damage from total particulate emissions, or "particulate matter," of which manganese is a component (*see* Docs. 70, 78). But this case has always been about manganese, and nowhere in the First Amended Complaint (Doc. 6) do Plaintiffs reference particulate matter. Plaintiffs may not alter their theory of the case on the eve of trial. In presenting their claims to the jury, Plaintiffs will be held to the allegations as presented in the First Amended Complaint.

**Trespass.** The parties agree indirect trespass is defined as: an action in tort for the unauthorized, intentional physical entry or intrusion of a chemical by aerial dispersion onto Plaintiffs' land, which causes substantial physical damage to the land or substantial interference with the

2

reasonable and foreseeable use of the land. *See Little Hocking Water Association, Inc. v. E.I. du Pont Nemours and Co.*, 91 F. Supp. 3d 940, 978–81 (S.D. Ohio 2015); *Brown,* 87 Ohio App. 3d at 716. The analysis of what constitutes "substantial" or "actual" damage to Plaintiffs' property is determined on a case-by-case basis. *See Chance v. BP Chem, Inc.*, 77 Ohio St. 3d 17, 27 (1996). Plaintiffs must show something more than the "mere detection" of manganese on their properties to establish the physical damage prong of an indirect trespass claim. *Baker v. Chevron*, 533 F. App'x 509, 522–23 (6th Cir. 2013).

Plaintiffs indicate they intend to show Nucor caused "substantial physical damage" to their properties by demonstrating the manganese found on their properties is harmful to human health (Doc. 70 at 12). The parties point to two recent Southern District of Ohio cases as instructive in evaluating whether evidence of "harmfulness to human health" may prove substantial physical damage to property -- *Baker v. Chevron U.S.A. Inc.*, 2011 WL 3652249 (S.D. Ohio 2011), *aff'd* 533 F. App'x 509 (6th Cir. 2013), and *Little Hocking Water Association, Inc. v. E.I. du Pont Nemours and Co.*, 91 F. Supp. 3d 940 (S.D. Ohio 2015). While these cases are distinguishable because they involve claims of specific harm to health *and* property, the legal theories they espouse apply here.

In *Baker*, residents living near a Chevron crude oil refinery alleged the refinery leaked gasoline and diesel fuel that entered the groundwater and created a plume on top of the groundwater that migrated from the refinery and contaminated plaintiffs' properties. The court found plaintiffs could not show they had suffered any damages as a result of Chevron's alleged tortious conduct. The record showed the plume presented an "indeterminate" and "unknown" health risk, and there was no evidence plaintiffs were likely to be exposed to harmful levels of future vapors emanating from the plume. 2011 WL 3652249, at \*8–9. In affirming the district court's grant of summary judgment in

3

favor of Chevron on plaintiffs' trespass and other property damage claims, the Sixth Circuit held plaintiffs failed to show a "substantial physical damage" to their property, or evidence "the soil vapors found on the properties were harmful to humans." 533 F. App'x at 524 ("Because this is not a class action, the district court correctly required plaintiffs to offer sufficient evidence showing the presence of subsurface contamination or soil vapors originating *from the plume* on each and every property involved in this case." (emphasis in original)).

In *Little Hocking*, a public water provider claimed a factory's waste disposal practices contaminated the Wellfield with C8, a compound used to manufacture Teflon products. Plaintiff alleged the factory emitted C8 as airborne particulates, damaging the groundwater and causing imminent and specific harm to health and the environment. *Little Hocking*, 91 F. Supp. 3d at 975. In granting plaintiff's motion for summary judgment on its trespass claim, the court considered the EPA's determination that C8 "may pose an imminent and substantial danger to human health and the environment." *Id.* at 982. Based on the concentrations of C8 in the soil and groundwater, the court found the C8 "substantially damaged the Wellfield, as it has rendered the groundwater unusuable without remediation." *Id.*

Although *Baker* and *Little Hocking* reached opposite conclusions, both courts focused on the plaintiff's ability to show the contaminant on plaintiff's property was likely to cause harm to human health. Similarly, Plaintiffs will need to connect the dots to succeed on their trespass claim by showing the manganese levels on each Plaintiff's property were likely to cause harm to human health and caused substantial damage to the properties.

**Nuisance.** The parties agree private qualified nuisance is defined as: an action in tort for the negligent maintenance of a condition which, of itself, creates an unreasonable risk of harm ultimately resulting in injury to land. *See Hager v. Waste Techs. Indus.*, 2002-Ohio-3466, at ¶ 128 (Ct. App.).

Qualified nuisance is premised on negligence and requires a showing of a "duty running from the defendant to the plaintiff, breach of duty by that defendant, damages suffered by the plaintiff, and a proximate cause relationship between the breach of duty and the damages." *Hester v. Dwivedi*, 89 Ohio St. 3d 575, 578 (2000); *Brown*, 87 Ohio App. 3d at 713. The existence of a duty depends on the foreseeability of the injury, and whether "a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St. 3d 75, 77 (1984). "The standard is that injury is foreseeable, not that the precise injury is predicted to occur." *Little Hocking*, 91 F. Supp. 3d at 975 (denying summary judgment on plaintiff's merged negligence and qualified private nuisance claims where there was a genuine issue of material fact regarding the foreseeability of plaintiff's injury). In *Little Hocking*, the court found a reasonable jury could conclude that evidence of C8 in public water supplies, including plaintiff's water supply, and defendant's knowledge of the biopersistence of C8 in people's blood and the environment, presented "an unreasonable risk that was made manifest by clear evidence presented to the defendant." *Id.*

Having clarified Plaintiffs' burden of proof on each claim, this Court next turns to Defendant's *Daubert* Motions.

**ANALYSIS**

Expert opinion testimony involves application of "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."

Federal Evidence Rule 702(a). Expert testimony is admissible only if the trial court finds the testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). Under Rule 702, this Court's inquiry is a "flexible one," focusing on "the principles and methodology [an expert uses], not on the conclusions that they generate." *Id.* at 595. This Court gauges reliability according to such factors as "(1) whether the theory or technique has been tested and subjected to peer review and publication, (2) whether the potential rate of error is known, and (3) its general acceptance." *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002). Plaintiffs bear the burden of showing by a preponderance of the evidence that the experts' testimony is admissible. *Daubert*, 509 U.S. at 579 & n.10.

**Dr. Jonathan Rutchik.** Dr. Rutchik is a Board Certified physician in neurology and occupational medicine, and specializes in the "evaluation of individuals and populations with suspected neurological illness secondary to exposure of various agents" (Doc. 68-1 at 1). After reviewing soil testing and air modeling data from Plaintiffs' environmental expert Lance Traves, medical studies regarding exposure to manganese, regulatory guidelines, and based on his own knowledge and experience in medicine and toxicology, Dr. Rutchik concludes, to a reasonable degree of medical certainty, "that persons who reside full time in the 'class area' [0.25 to 0.5 miles from Nucor's steel plant] for a period of ten (10) years or more will suffer harm to their health caused by such chronic exposure to such elevated levels of manganese" (*id.* at 3).

Dr. Rutchik's opinion is not admissible under Federal Evidence Rule 702. His comparison of the results of Traves' air and soil analyses with the EPA's reference concentration for manganese and eight scientific articles is not "the product of reliable principles and methodology." Federal Evidence Rule 702; *cf. Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 180 (6th Cir. 2009) (finding

6

medical expert's opinion and deferential diagnosis methodology were sufficiently reliable to warrant admissibility). Dr. Rutchik's opinion is conclusory and his assertion that all Plaintiffs have been adversely affected by Nucor's manganese emissions is too broad, general, and vague to be helpful to the trier of fact. *See Baker*, 533 F. App'x at 523–24 (excluding expert testimony for similar reasons). Dr. Rutchik's opinion that Plaintiffs "*will* suffer harm to their health" is not based on any examination or testing and does not address the type or degree of harm Plaintiffs will suffer (*see* Doc. 68-9 at 6). Nor is Dr. Rutchik's opinion supported by the record. *See In re Scrap Metal*, 527 F.3d 517, 530 (6th Cir. 2008) (holding that to be admissible under Rule 702, the expert's opinion must find factual support in the record). For instance, Plaintiffs, each of whom lived in Marion for over ten years, do not present any symptoms of illness relating to any alleged manganese exposure (*see* Bush Dep. (Doc. 68-7) at 13–15; Tolle Dep. (Doc. 68-8) at 14).

Rutchik's failure to "test [his] hypothesis in a timely and reliable manner or to validate [his] hypotheses by reference to generally accepted scientific principles as applied to the facts of the case renders [his] testimony . . . inadmissible." *Pride v. BIC Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000) (finding expert's theory unsupported by reliable testing); *see Brown v. Raymond Corp.*, 432 F.3d 640, 648 (6th Cir. 2005) (affirming exclusion of expert's testimony and finding that expert's "failure to empirically test his theories . . . undermined the reliability of his testimony").

**Lance Traves.** Traves is an expert in environmental compliance, with specialized expertise in air compliance, and has a background in risk assessment (Doc. 68-10 at 9). Traves used the AERMOD program, the EPA's preferred program for modeling emission dispersions, to test air and soil at Plaintiffs' properties. Based on his analysis, Traves concluded: (1) Nucor is the source of air pollutant emissions that caused manganese concentrations in the air at Plaintiffs' properties to exceed

7

the EPA's threshold; and (2) concentrations of manganese detected in the surface soils at Plaintiffs' properties exceed Ohio background levels and are the direct result of Nucor's historical air emissions of manganese (Doc. 68-3). Defendant moves to exclude Traves' methodology as unreliable because he allegedly used the highest data points to maximize his findings (Doc. 67-1 at 38–40).

Defendant's argument "confuses the *credibility and accuracy* of [Traves'] opinion with its *reliability*." *In re Scrap Metal*, 527 F.3d at 529 (emphasis in original). Traves may testify regarding his analysis of the air pollutant emissions and concentrations of manganese in the surface soils. Traves' opinions may have their shortcomings, which Defendant may explore through cross-examination, but his analysis is a reliable application of testable scientific methods. *See id.* at 530 (reasoning that when a party attacks an expert analysis as inadmissable because it uses "incorrect" or missing data or the "wrong equations," such attacks "impugn the *accuracy* of [the expert's] results, not the general scientific *validity* of [the expert's] methods." (emphases in original) (internal citation omitted)).

Defendant also moves to exclude Section 7.0 of Traves' report in which he analyzes publicly available EPA communications and opines regarding the EPA's beliefs and conclusions (Doc. 67-1 at 41). Section 7.0 of Traves' report and related opinions proffered during his deposition relating to the EPA's state of mind go beyond the permissible scope of expert testimony and shall be excluded. *See In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815, 849 (N.D. Ohio 2010) (precluding expert from testifying regarding entity's intent or state of mind).

Finally, Plaintiffs represent in their brief (Doc. 70 at 25) that they do not intend to offer Traves' opinions regarding alleged health effects of manganese and physical damage caused by manganese. With this concession, that portion of Defendant's motion is denied as moot.

8

**Craig Cantrall.** Cantrall is a Cleveland-based real estate agent who has never "bought or sold a home within a hundred miles" of Marion, and does not recall ever visiting Marion (Cantrall Dep. (Doc. 68-8) at 6, 10). Cantrall concludes, based on the soil and air test results gathered by Plaintiffs and the EPA, Dr. Rutchik's report, and his training and experience in the Ohio real estate industry, that the value of the affected homes in Marion has been reduced by 30–40% (Doc. 68-2 at 3). Cantrall based this opinion on his consideration of the potential cost of mitigating an "environmental condition" and his experience that a businessman would pay 30–50% of a property's value for a foreclosed property or a house that needs to be redone (Cantrall Dep. at 23–24).

Cantrall's analysis is not an appraisal of the Marion housing market. In preparing his opinion he did not survey the area, or consider the specifics of Plaintiffs' house locations or neighborhoods, the ages or sizes of the houses or lots, or the quality of construction of the houses (Cantrall Dep. at 20–21). Rather, Cantrall appraised the "effect on [property] value based upon Dr. Rutchik's report" (*id.* at 23). He admits his appraisal is subjective, has "very little to do with . . . facts and figures," and cannot be "check[ed] for accuracy" because "the value [of real estate] relies on emotion 90 percent of the time" (*id.* at 6, 10, 23). Without evidence of actual damages, which Cantrall admits he cannot provide, his opinion is an inadmissible calculation of stigma damages that cannot be shown with reasonable certainty. *See Younglove Const., LLC v. PSD Dev., LLC*, 782 F. Supp. 2d 457, 465 (N.D. Ohio 2011) (excluding real estate appraisal based on stigma damages). Because his analysis rests on nothing more than his *ipse dixit*, *Tamraz v. Lincoln Elec. Co*, 620 F.3d 665, 671 (6th Cir. 2010), his testimony is excluded.

**Plaintiffs' Motion for Judicial Notice.** Plaintiffs request Defendant be judicially estopped from advancing arguments that allegedly contradict Defendant's position in other litigation and that

9

this Court take judicial notice of certain information filed on the EPA's website (Doc. 70 at 41–45; Doc. 72). This request is denied without prejudice. Counsel are encouraged to confer regarding joint stipulations to be read to the jury, including any EPA findings or matters of public record relevant to this case. This Court will not litigate other pending cases involving Defendant or allow Plaintiffs to "data dump" EPA records for a jury to decipher.

However, if relevant and appropriate under the Federal Evidence Rules, this Court will permit Plaintiffs to impeach Defendant's corporate witnesses with prior inconsistent statements. As for the EPA publications, Plaintiffs must show how the specific information they seek to introduce by judicial notice relates to the claims of these Plaintiffs, which they have yet to do.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude Expert Testimony (Doc. 67) is granted as to Dr. Jonathan Rutchik and Craig Cantrall, and granted in part and denied in part as to Lance Traves. Plaintiffs' Motion for Judicial Notice (Doc. 72) is denied without prejudice.

IT IS SO ORDERED.

      s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

November 9, 2015